**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert McDonald, an unmarried man, ) | No. CV-09-00781-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Corrections Corporation of America; John ) | |
| Does and Jane Does I–X; A, B and C ) | |
| Corporations, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Defendant Corrections Corporation of America's ("CCA") Motion for Summary Judgment (Doc. # 42). Plaintiff Robert McDonald ("McDonald") filed a Response in opposition to CCA's Motion (Doc. # 50), and CCA filed a Reply in support of its Motion (Doc. # 51). The Court has reviewed the parties' filings and now rules on the Motion.

**I.     FACTUAL BACKGROUND**

As an initial matter, the Court finds that McDonald has failed to dispute CCA's Statement of Facts, and as a result, CCA's version of the facts are deemed admitted.[1]

---

[1] Although McDonald filed a response in opposition to CCA's Motion referencing a separate statement of facts, McDonald failed to file a separate statement controverting any facts asserted in CCA's Statement of Facts. The local rule governing motions for summary

McDonald was hired by CCA in July 2006 as a Correctional Officer at the Florence Correctional Center. (Doc. # 43, Defendant CCA's Separate Statement of Facts in Support of Motion for Summary Judgment ("DSOF") at ¶ 1.) When McDonald was hired for the position of Correctional Officer, he completed a Post-Offer Medical Questionnaire and Consent Form on which he stated that he had Adult Attention Deficient Disorder ("ADD") and was taking two types of medication. (DSOF ¶¶ 30–31.) At the time he was hired, McDonald did not request an accommodation to perform the essential functions of his job. (DSOF ¶ 32.)

Each applicant for a position as a Correctional Officer is provided with a job description and a description of the essential functions of the position of Correctional Officer. (DSOF ¶ 8.) According to the job description, a Correctional Officer must be able to work any post assignment on any shift. (DSOF ¶ 5.) A Correctional Officer who cannot correctly and appropriately respond to an inmate-on-staff assault creates an unsafe environment for other employees and inmates, and compromises the safety and security of the facility. (DSOF ¶ 7.) When he was hired, McDonald acknowledged that he reviewed the essential functions of the position of Correctional Officer, and he stated that he was able to perform

---

judgment provides:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth[,] for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact.

Rules of Practice of the U.S. District Court for the District of Arizona ("LRCiv") 56.1(b). The Local Rule further provides that "[e]ach numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts must, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted." *Id.* (emphasis added). McDonald disputes some of CCA's assertions in his Response, but McDonald points to no evidence in the record to support his position on those disputed facts. Thus, pursuant to Local Rule 56.1(b), CCA's assertions in its Statement of Facts, which are supported by evidence in the record, will be deemed admitted by McDonald for purposes of CCA's Motion.

- 2 -

1  all of them.  (DSOF ¶¶ 9, 34.)  McDonald also acknowledged that he understood the job of
2  Correctional Officer required mental alertness and that security of the facility was paramount.
3  (DSOF ¶ 36.)

4        CCA has a Code of Ethics and Conduct for the Florence Correctional Center
5  (the "Code of Ethics"), which states employees are prohibited from violating or disobeying
6  established rules, regulations, or orders from a supervisor.  (DSOF ¶ 18.)  Pursuant to the
7  Code of Ethics, employees are also prohibited from engaging in neglect that endangers the
8  well-being of themselves and other employees.  (DSOF ¶ 19.)  A Correctional Officer, who
9  fails to carry out his job duties, creates a potentially life-threatening situation and violates the
10 Code of Ethics.  (DSOF ¶ 20.)  When he was hired, McDonald acknowledged that he
11 reviewed and understood the Code of Ethics.  (DSOF ¶ 29.)

12       CCA has a progressive disciplinary system for minor and major infractions that
13 provides for corrective action ranging from warnings to termination.  (DSOF ¶¶ 21–23.)
14 CCA has the discretion to determine the type and severity of the corrective action, and the
15 form of corrective action depends on the seriousness of the violation committed and the
16 employee's disciplinary history.  (DSOF ¶¶ 24–25.)  In the event an employee is terminated,
17 the employee may file a grievance pursuant to CCA's Employee Grievance Procedure Policy
18 (the "Grievance Policy").  (DSOF ¶ 26.)

19       Throughout his employment with CCA, McDonald had attendance problems and was
20 frequently reporting late for his shift.  (DSOF ¶ 37.)  Supervisors counseled McDonald on
21 several occasions regarding his tardiness, and he was separately issued a Letter of Instruction
22 and an Employee Problem Solving Notice regarding his tardiness.  (DSOF ¶¶ 38–47, 52.)

23       One of the post assignments that a Correctional Officer can be assigned to is the
24 Suicide/Constant Watch Unit.  When assigned to the Suicide/Constant Watch Unit,
25 Correctional Officers are required to follow the general orders and the specific duties set
26 forth in Post Order 28. (DSOF ¶ 10.)  Pursuant to Post Order 28, a Correctional Officer must
27 maintain constant observation of the inmate, and is not permitted to leave the post without
28 being properly relieved by another Correctional Officer.  (DSOF ¶ 11.)  If it is necessary for

1  a Correctional Officer to open a cell door, then another Correctional Officer must be present
2  prior to opening the door. (DSOF ¶ 12.)

3  On July 2, 2007, McDonald was assigned to the Suicide/Constant Watch Unit to
4  maintain constant watch over a segregated inmate. (DSOF ¶ 55.) Plaintiff left the segregated
5  inmate to respond to another inmate's request to turn the water on in his cell. (DSOF ¶ 56.)
6  In tending to the other inmate, McDonald abandoned his constant watch post and left the
7  slotted opening on the segregated inmate's cell door unattended. (DSOF ¶ 57.) This allowed
8  the segregated inmate to take McDonald's video camera and security radio. (DSOF ¶¶
9  58–59.) In his deposition, McDonald admitted the importance of constant watch and
10 admitted that he took his eyes of the segregated inmate. (DSOF ¶ 60.)

11 Upon discovering that the segregated inmate had McDonald's video camera and
12 security radio in his cell, McDonald tried to retrieve the equipment by reaching into the
13 slotted opening of the cell door where he was assaulted by the segregated inmate. (DSOF
14 ¶¶ 64–65.) Then, the segregated inmate destroyed the security equipment. (DSOF ¶ 66.)

15 CCA's Chief of Security recommended McDonald be terminated for (1) his failure
16 to carry out his job duties while assigned to the Suicide/Constant Watch Unit, (2) conduct
17 that created a potentially life-threatening incident, and (3) violations of CCA's Code of
18 Ethics. (DSOF ¶ 67.) CCA's Acting Warden concluded that termination was the appropriate
19 punishment due to McDonald's inattentiveness to his job duties and post abandonment.
20 (DSOF ¶ 68.) The CCA Facility Employee Problem Solving Notice, dated July 3, 2007,
21 states that "Officer McDonald failed to carry out his duties and responsibilities as cited in
22 Post Order # 28 and Policy 3-3 Code of Conduct. This failure led directly to the loss of CCA
23 property." (Doc. # 43-4, Ex. 23 at p.1.) The "corrective action" recommended in this notice
24 was termination. (*Id.*) Consequently, on July 4, 2007, CCA terminated McDonald's
25 employment. (DSOF ¶ 69.)

26 Pursuant to CCA's Grievance Policy, on July 16, 2007, McDonald filed a grievance
27 with CCA's corporate office. (DSOF ¶ 70.) Following an investigation and hearing, CCA's
28 Managing Director of Facility Operations confirmed that McDonald's termination was

- 4 -

appropriate and upheld the Acting Warden's decision.  (DSOF ¶ 71.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED.R.CIV.P. 56(a).  A party must support a factual assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1).  Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the non-movant to establish the existence of material fact. *Id.*  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting FED.R.CIV.P. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48.  However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

As mentioned above, the party opposing summary judgment must "go beyond the pleadings and, by [his] own affidavits, or by the 'depositions, answers to interrogatories, and

- 5 -

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (quoting *Celotex*, 477 U.S. at 324); *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988). To avoid summary judgment, the non-moving party must present "significant probative evidence tending to support" its allegations. *Bias*, 508 F.3d at 1218 (quoting *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983)). "A district court does not have a duty to search for evidence that would create a factual dispute. *Id*. at 1219 (citing *Carmen*, 237 F.3d at 1031).

### III.   ANALYSIS AND CONCLUSION

CCA has moved for summary judgment on McDonald's claim for discrimination and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et. seq.* (the "ADA"), and his claim of defamation.[2] CCA argues that the record lacks sufficient evidence to support McDonald's claims that he was discriminated or retaliated against because of his alleged disability. With respect to the defamation claim, CCA argues that McDonald failed to identify any false statement that CCA made to McDonald's potential employers.

In opposing CCA's Motion, McDonald cannot rest on allegations or denials in his pleadings; he must set forth specific facts and citations to the record, and produce sufficient evidence demonstrating that there is a genuine issue for trial. *See* FED.R.CIV.P. 56(e)(2); LRCiv 56.1(b). McDonald opposes CCA's Motion by arguing that there is a genuine issue of material fact concerning whether McDonald has a disability under the ADA, and if he does, whether a major life activity is substantially limited by his condition. (Doc. # 50 at pp. 14–15.) McDonald argues that due to recent amendments to the ADA,[3] there is a question

---

[2] McDonald's claim for violations of "Title VII/the ACRA" was dismissed by the Court pursuant to the parties' joint stipulation. (Doc. # 40.) CCA moves for summary judgment on the remaining two claims in McDonald's First Amended Complaint.

[3] The Court notes that the amendment to the ADA, Pub. L. No. 110-325, § 4(a), 122 Sta. 3553 (2008), was effective January 1, 2009, and does not apply retroactively. *Becerril*

- 6 -

of material fact as to whether McDonald's ADD substantially limited his performance of a major life activity. (*Id.* at pp. 8–10.) The Court finds that even construing the disputed facts, if any, in the light most favorable to the non-moving party, CCA is still entitled to judgment as a matter of law for the following reasons.

### A. Discrimination Under the ADA

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480 (9th Cir.1996) (quoting 42 U.S.C. § 12112(a)). To establish a claim under the ADA, the plaintiff must show that he: (1) is a disabled person within the meaning of the ADA, (2) is qualified with or without a reasonable accommodation to perform the essential functions of the job, and (3) suffered an adverse employment action because of the disability. *Id.* at 1481. Once the plaintiff has established a prima facie case, the burden of persuasion then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Finally, the burden of persuasion reverts to the plaintiff to provide evidence that the reasons put forth by the defendant constitute mere pretext. *Burdine*, 450 U.S. at 256. In the context of a motion for summary judgment, the plaintiff must raise a genuine issue of material fact that the defendant's legitimate, non-discriminatory reason for an adverse employment action was pretextual. *Snead v. Metro. Prop. & Cas. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001).

In his response, McDonald argues that genuine issues of material fact exist as to whether CCA regarded McDonald as disabled. (Doc. # 50 at p. 12–13.) However, McDonald fails to "cit[e] to particular parts of materials in the record," from which a reasonable fact-finder could conclude that he was, in fact, disabled. *See* FED.R.CIV.P.

---

*v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009); *Vasquez v. PMB Enter. West, Inc.*, 2010 WL 3419451, *9 n.3 (D. Ariz. Aug. 26, 2010). Because the alleged discriminatory conduct in this action occurred before January 1, 2009, McDonald's claims will be analyzed under the law in effect in 2008.

1    56(c)(1).

2    Even if McDonald had presented evidence sufficient to establish a prima facie case
3    of disability discrimination under the ADA (that he is a qualified individual with disabilities,
4    who can perform essential job functions), CCA has articulated a legitimate, non-
5    discriminatory reason for its adverse employment action. It is undisputed that McDonald
6    was terminated for his misconduct (Doc. # 43-4, Ex. 23 at p.1), and not for an alleged
7    disability. *See Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir. 1995) ("Courts
8    have recognized a distinction between termination of employment because of misconduct and
9    termination of employment because of a disability.").

10   Continuing to assume that McDonald established a prima facie case under the ADA,
11   the burden is once again on McDonald to identify evidence raising a genuine issue of
12   material fact regarding the truth of CCA's proffered reasons for the termination. McDonald
13   has failed to present evidence, circumstantial or otherwise, from which a reasonable fact-
14   finder could conclude that the reasons given by CCA for McDonald's termination were a
15   pretext for discriminatory conduct in violation of the ADA. Specifically, McDonald failed
16   to offer any evidence that refutes CCA's assertion that McDonald was terminated for his
17   misconduct in the Suicide/Constant Watch Unit on July 2, 2007. McDonald, therefore, failed
18   to carry his burden under the final stage of the *McDonnell Douglas* framework, and CCA is
19   entitled to judgment as a matter of law.

20   **B.     Retaliation Under the ADA**

21   McDonald's retaliation claim fails for the same reasons as his discrimination claim
22   — he failed to present any evidence that his tardiness warnings and subsequent termination
23   were in retaliation for requesting an accommodation for his alleged disability. In order to
24   establish a prima facie case of retaliation under the ADA, a plaintiff must show "(1)
25   involvement in a protected activity, (2) an adverse employment action and (3) a causal link
26   between the two." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir.
27   2004) (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)). "The plaintiff
28   must present 'evidence adequate to create an inference that an employment decision was

*based on* an illegal discriminatory criterion.'" *Id.* (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)).

Assuming *arguendo* that McDonald engaged in a protected activity when he purportedly requested that CCA make reasonable accommodations for his alleged disability, CCA has demonstrated, and McDonald has failed to rebut,[4] that CCA took adverse employment action against McDonald for legitimate, non-retaliatory reasons unrelated to any alleged disability or any alleged request for accommodation. McDonald has failed to establish a causal link between protected activity and adverse employment action. Further, McDonald has not presented any evidence that CCA's reasons for McDonald's termination were merely a pretext. Therefore, McDonald failed, as a matter of law, to present a prima facie case for retaliation.

Based on the foregoing reasons, the Court finds that as a matter of law, McDonald has failed to state a claim for relief under the ADA.

### C. Defamation Claim

With respect to Count Three (Liable [sic] and Slander/Defamation) of the First Amended Complaint, the Court finds that McDonald has failed to present any evidence of false or defamatory statements made by CCA to the Gila River Indian Community and the Arizona Department of Corrections in response to inquiries for employment references. To state a claim for defamation under Arizona law, a plaintiff must show "the publication to a third party, of a false, defamatory statement of and concerning the plaintiff that is not privileged." *Spratt v. N. Automotive Corp.*, 958 F. Supp. 456, 465 (D. Ariz. 1996) (citing *Yetman v. English*, 168 Ariz. 71 (1991)).

Here, McDonald has failed to identify any false or defamatory statement CCA made concerning his employment. McDonald's response to CCA's Motion restates the allegations

---

[4] In his response, McDonald does not address CCA's arguments regarding the retaliation claims. Accordingly, McDonald has waived his claim of retaliation. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (citing *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996)).

- 9 -

1   in the Complaint without citation to evidence in the record.  McDonald argues that there is
2   a genuine issue of material fact, because McDonald was not hired by the Gila River Indian
3   Community or the Arizona Department of Corrections, even though he was hired by other
4   employers who did not contact CCA for an employment reference.  (Doc. # 50 at pp. 13–14.)
5   However, McDonald testified that he does not know why he was not hired by either the Gila
6   River Indian Community, or the Arizona Department of Corrections.   (DSOF ¶ 74.)
7   McDonald has not met his burden of coming forward with evidence on the elements of
8   defamation.  As an initial matter, he has not submitted any evidence of statements made by
9   CCA to the potential employers.  Further, McDonald has not submitted any evidence that
10  CCA's purported statements were false or defamatory, and he has not submitted any
11  evidence to overcome CCA's claim of immunity from civil liability under Arizona's
12  blacklisting statute, A.R.S. § 23-1361.[5]  McDonald's defamation claim is not well-grounded
13  in law and is not factually supported.  McDonald has failed to come forward with evidence
14  of the issues to which he would bear the burden of proof at trial.  Therefore, the Court finds
15  that McDonald has not created a factual issue, and CCA is entitled to judgment as a matter
16  of law on Count Three of the First Amended Complaint.

17  **D.     Punitive Damages**

18  Finally, CCA argues that summary judgment should be granted in its favor on punitive
19  damages.  The Court agrees.  Because the Court will grant summary judgment to CCA on
20  the remaining claims in the First Amended Complaint, there are no causes of action on which
21  a claim for punitive damages could stand.

22  **IV.    CONCLUSION**

23  The Court finds that there are no triable issues of fact that preclude resolution of this

---

[5] McDonald argues that he has not asserted a claim for blacklisting under A.R.S. § 23-1361, and as such, CCA should not be entitled to its costs and fees.  However, this statute permits CCA to provide a prospective employer with information concerning a former employee's education, training, experience, qualifications and job performance to be used to evaluate the person for employment.  *See* A.R.S. § 23-1361.

1 matter by dispositive motion as a matter of law. Accordingly,

2 **IT IS ORDERED** that Defendant Correction Corporation of America's Motion for
3 Summary Judgment (Doc. # 42) is **GRANTED**.

4 **IT IS FURTHER ORDERED** that this action is closed, and the Clerk of the Court
5 shall enter final judgment in favor of Defendant Corrections Corporation of America on the
6 remaining claims in the First Amended Complaint.

7 Dated this 12th day of January, 2011.

James A. Teilborg
United States District Judge